Thomas F. KELLY, Sr., Thomas F. Kelly, Jr., and George L. Kelly, co-partners doing business under the name and style of Illinois Sports News, Plaintiffs-Appellees,

v.

ILLINOIS BELL TELEPHONE COMPANY, an Illinois corporation, Defendant-Appellant,

and

United States of America, Defendant-Intervenor, Appellant.

Thomas F. KELLY, Sr., Thomas F. Kelly, Jr., and George L. Kelly, co-partners doing business under the name and style of Illinois Sports News, Plaintiffs-Appellees,

v.

The WESTERN UNION TELEGRAPH COMPANY, a New York corporation, Defendant,

and

United States of America, Defendant-Intervenor, Appellant.

Nos. 14112–14114.

United States Court of Appeals
Seventh Circuit.

Dec. 6, 1963.

Walter J. Cummings, Jr., Chicago, Ill., for appellant.

Howard P. Willens, Asst. Atty. Gen., Criminal Division, U. S. Department of Justice, Washington, D. C., Frank E. McDonald, U. S. Atty., Chicago, Ill., Herbert J. Miller, Jr., Asst. Atty. Gen., Beatrice Rosenberg, Edward T. Joyce, Sidney M. Glazer, Attorneys, Criminal Division, Department of Justice, Washington, D. C., James P. O'Brien, U. S. Atty., Chicago, Ill., for intervenor.

Walter E. Gallagher, Washington, D. C., Edward J. Calihan, Jr., Chicago, Ill., for appellees.

Before KNOCH and CASTLE, Circuit Judges, and MAJOR, Senior Circuit Judge.

KNOCH, Circuit Judge.

Appellants, Illinois Bell Telephone Company, defendant (sometimes herein-

after called "Illinois Bell"), and the United States of America, defendant-intervenor, are appealing from an order of the United States District Court which permanently enjoined the Illinois Bell and the Western Union Telegraph Company (which did not appeal) from terminating communication facilities presently furnished to the plaintiffs-appellees, Thomas F. Kelly, Sr., Thomas F. Kelly, Jr., and George L. Kelly, co-partners doing business under the name and style of Illinois Sports News.

The facts were stipulated. We need not set them out in full, as they are readily available in the published opinion of the District Court, 210 F.Supp. 456 (1962).

On written notification from the Assistant Attorney General in charge of the Criminal Division of the United States Department of Justice that plaintiffs were using their facilities for transmission and receipt of gambling information in violation of federal law, Illinois Bell and Western Union notified plaintiffs (in April 1962) that they would discontinue service pursuant to Title 18 U.S.C. § 1084(d).[1]

On May 3, 1962, plaintiffs filed two complaints in the District Court seeking permanent injunctions on the alternative grounds:

1. That their activities do not violate any Federal, State or local law and that therefore the provisions of Title 18 U.S.C. Section 1084(d) are inapplicable to them; or

2. That, if it be determined that the provisions of such section are applicable to them, the section in question is invalid in that it is contrary to the First and Fifth Amendments to the Constitution of the United States.

The United States, allowed to intervene as a defendant, contended:

1. That the activities of the plaintiffs do violate certain Federal and State laws, to wit—

    (a) Chapt. 38, Illinois Revised Statutes, Section 28–1(a) (10);

    (b) Title 18 U.S.C. § 1084(a);

    (c) Title 18 U.S.C. § 1952;

    (d) Title 18 U.S.C. § 1953; and

    (e) Title 47 U.S.C. § 501.

2. That the provisions of Section 1084(d) in their application to the plaintiffs are valid and not in violation of either the First or Fifth Amendments to the Constitution of the United States.

The Illinois Bell and Western Union simply asserted that if the activities of the plaintiffs were found to violate any Federal, State or local law, then the procedures of § 1084(d) did not violate Constitutional due process.

It was suggested by the government that this case might properly require determination by a three-judge court (Title 28 U.S.C. § 2284). However, the District Court, with the acquiescence of the parties decided first to determine the issue whether § 1084(d) was applicable to plaintiffs' activities.

The District Judge held that plaintiffs' business activities were not in violation of federal law. He, therefore, found it

[1]. 18 U.S.C. § 1084(d). "When any common carrier, subject to the jurisdiction of the Federal Communications Commission, is notified in writing by a Federal, State, or local law enforcement agency, acting within its jurisdiction, that any facility furnished by it is being used or will be used for the purpose of transmitting or receiving gambling information in interstate or foreign commerce in violation of Federal, State or local law, it shall discontinue or refuse, the leasing, furnishing, or maintaining of such facility, after reasonable notice to the subscriber, but no damages, penalty or forfeiture, civil or criminal, shall be found against any common carrier for any act done in compliance with any notice received from a law enforcement agency. Nothing in this section shall be deemed to prejudice the right of any person affected thereby to secure an appropriate determination, as otherwise provided by law, in a Federal court or in a State or local tribunal or agency, that such facility should not be discontinued or removed, or should be restored."

unnecessary to convene a three-judge court.[2] Nevertheless, the government argues that the single District Judge lacked jurisdiction to determine these cases (regardless of whether he was, or was not, requested to convene a three-judge court) because plaintiffs sought to enjoin enforcement of the statute on both Constitutional and non-constitutional grounds, and Title 28 U.S.C. § 2282 granted "no jurisdiction to divide a case so that its non-constitutional issues may be decided by a single judge and its constitutional issues, *if still necessary for decision in the case,* by a three judge panel." [Emphasis added.]

Plaintiffs' grounds for the injunction here sought were set forth in the alternative. After determination of the non-constitutional issues by the single District Judge, resolution of the Constitutional issues was not still necessary for a decision of these cases.

■■ Questions of constitutionality are not to be decided unless such adjudication is unavoidable. Here the determination of the threshold issue disposed of any need for a three-judge court to determine the Constitutionality of the statute as applied to plaintiffs. Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000, and cases there cited; Chicago, Duluth & Georgian Bay Transit Co. v. Nims, 6 Cir., 1958, 252 F.2d 317, 319, 321.

It was stipulated that plaintiffs used the defendants' communication facilities for the sole purpose of receiving and transmitting racing and other news to be published in publications sold and distributed to the general public solely through newsstands, agency news distributors, inside race track enclosures, and to individual subscribers. The District Court found that similar (sometimes almost identical) information is reported in newspapers of much broader circulation, and that plaintiffs accept no bets or wagers either by wire communication facilities or otherwise.

The government also contends that the District Court misconstrued the statute in determining that it was not applicable to plaintiffs' activities and, in any event, that plaintiffs' activities were expressly exempted. The government's analysis of this statute as set out in its brief reads in part as follows:

"The aim of Congress was to assist the states in enforcing their policy against illicit wagering, by forbidding the transmission into a state of gambling information, such as horse race betting information, the purpose of which must, as here, be to assist in the violation of state laws.

"(A) The language of section 1084 shows this broad purpose. Subsection (a) makes it a crime for anyone engaged in the wagering business to use interstate wire facilities to transmit wagers and information assisting in the placing of wagers on sporting events. Subsection (d) provides that wire facilities shall be removed when used for the purpose of transmitting 'gambling information' 'in violation of Federal, State or local law.'

\* \* \* \* \* \*

"The exemption for news reporting of sporting events illustrates that Congress deemed the general language of the statute broad enough to cover information which in itself did not violate the law."

No question is raised here as to the District Judge's determination that the burden of proof rested with defendants and with the government as the real moving party in the proceeding.

■■ To ascertain whether the record before him established by a preponderance of the evidence (this being a

2. Cf. Telephone News System Inc. v. Illinois Bell Telephone Co., N.D.Ill., 210 F.Supp. 471 (1962) where the same District Court found that a substantial Constitutional question was raised which required convening a three-judge court. See D.C. 220 F.Supp. 621 (1963) for the opinion of the three-judge court which considered that case.

civil action) that plaintiffs were using the facilities in question to transmit or receive gambling information in interstate or federal commerce in violation of law so that § 1084(d) became applicable to plaintiffs, the District Judge examined each of the statutes which the government contended had been violated. We have, in turn, also scrutinized these statutes and the pertinent authorities and references to which our attention has been invited by the various counsel for the parties in these cases. Our own study leads us to agree with the District Judge that Illinois Criminal Code, 1961, § 28-1(a) (10)

> "*  *  * is obviously directed at the rapid transmission of either actual wagers, betting odds or changes in betting odds to or by persons directly or indirectly engaged in gambling operations. Neither the language of the statute nor the available legislative history indicates any intention to include transmissions of information to and for subsequent use by publishers of newspapers and other printed publications."

that

> "Giving effect to all of the language actually used by Congress, it must be concluded that the prohibitions of Section 1084(a) are applicable only to persons who, in the normal context of the words, can be said to be 'engaged in the business of betting or wagering.' On the record before this Court, it is clear that plaintiffs are not so engaged."

and that plaintiffs' activities are excluded from the scope of § 1084(a) by § 1084 (b):

> "Nothing in this section shall be construed to prevent the transmission in interstate or foreign commerce of information for use in news reporting of sporting events or contests, or for the transmission of information assisting in the placing of bets or wagers on a sporting event or contest from a State where betting on that sporting event or con-

test is legal into a State in which such betting is legal."

With respect to alleged violation of Title 18 U.S.C. § 1953, also urged by the government, on the basis of prosecution in Case No. 25,778, in the U. S. District Court for the Western District of Kentucky, we have carefully considered those portions of the record in that proceeding which are included in the record before us. We must conclude, as did the District Judge, that, on the basis of the record before us, the jury's verdict in the Kentucky case is equally susceptible of diametrically opposed inferences with respect to the basic issue here: were defendants' telephone or telegraph facilities used for "transmitting or receiving gambling information in interstate or foreign commerce in violation of Federal, State or local law"?

■ We also agree that 18 U.S.C. § 1952 (interstate or foreign travel or transportation in aid of racketeering enterprises) and 47 U.S.C. § 501 [general penalty, (which is relevant only if plaintiffs have violated the Illinois Criminal Code or 18 U.S.C. § 1084(a))] are not violated in the circumstances of this case.

The government further contends that:

> "[T]he relief granted should be restricted to an order forbidding the telephone and telegram companies from discontinuing their facilities upon the basis of the letters heretofore sent by the Assistant Attorney General."

and that

> "Under the present order, plaintiffs are free to continue their activities even though direct illegal use thereof may be shown in the future. The broad order of the court below in effect grants plaintiffs a license to violate existing laws."

As plaintiffs point out, however, discontinuance of their facilities is not prohibited to defendants if additional prima facie evidence should be adduced in the future reflecting use of defendants' facilities, in some manner other than that

set forth in the Stipulation, the Findings of Fact and the Opinion, which does show a violation of Federal, State or local law.

The wording of the injunction was the subject of considerable colloquy between the Court and the counsel. The following typical interchanges of comment indicate that the language used ultimately met the approval of counsel for the government.

"The Court: I take it Mr. Kiernan [counsel for the government] not only wants to preserve your freedom, but the government's freedom if they discover other allegedly illegal use to start this process over, is that right?

"Mr. Kiernan: That is right, and also state and local officials because they have equal rights as a federal law enforcement agency does under the statute.

"Mr. Gallagher [counsel for plaintiffs]: They are not precluded under the preceding language in this paragraph. It is still wide open. If these facilities are used other than your Honor has found them being used under the existing statutes, they could move as though the injunction was not in force and in effect.

\*    \*    \*    \*    \*    \*

"The Court: \* \* \* The minute you have other grounds than what are in the stipulation, findings of fact and opinion in this case, this injunction doesn't cover it.

"Mr. Ward [counsel for Illinois Bell]: Your Honor, where it says 'on the grounds they are being used in a certain manner,' if there were a later law enacted and the facilities continued to be used in the same manner as was true in this case, there might be grounds for our complying with the government order,

and yet the injunction would forbid us to do so.

"The Court: I think it would not. As I said in the opinion, all I have concluded is that Congress hasn't so far—not that they couldn't, but they haven't so far made these activities illegal \* \* \*. I cannot see how a new law would be within the scope of this injunction. It can't possibly be because the law which doesn't exist on the books can't be part of the basis for the opinion or the findings of fact or the stipulation for that matter.

\*    \*    \*    \*    \*    \*

"The Court: As far as I know, you have raised all the statutes and laws you knew. I take it that, you know, I don't think we tried this case on the theory that you were holding something back, and if you lost it on these statutes, you would try with some others. I take it Mr. Ward is talking about new statutes. \* \* \* [L]et's limit it to the statute of the State of Illinois, if you like.

"Mr. Ward: Federal and Illinois State.

\*    \*    \*    \*    \*    \*

"The Court: It will read 'under the federal and Illinois statutes now existing and on the ground that these facilities are being used in the manner described in the stipulation, findings of fact and opinion herein.'

"\* \* \* Are there any further comments, Mr. Kiernan?

"Mr. Kiernan: No, I believe that would do it."

While we have given attention to all of the arguments made by the parties in their briefs and oral argument, we find nothing which induces us to abandon our conviction that the District Court's order must be affirmed.

Affirmed.