Sylvia **WILSON**, Individually and on behalf of her unborn child and on behalf of all others similarly situated, Plaintiffs,

v.

Edward T. **WEAVER**, Director, Illinois Department of Public Aid, and David L. Daniel, Director, Cook County Department of Public Aid, Defendants.

No. 72 C 1960.

United States District Court,
N. D. Illinois, E. D.

Dec. 26, 1972.

Supplemental Opinion May 23, 1973.

Sheldon H. Roodman, Lorelei Burland, Legal Aid Society, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., Herbert L. Caplan, Asst. Atty. Gen., Bernard Carey, State's Atty. of Cook County, Fredric Weinstein, Asst. State's Atty., Chicago, Ill., for defendants.

Brief of amicus curiae filed on behalf of the Dept. of Health, Education and Welfare.

## MEMORANDUM OPINION AND JUDGMENT ORDER

AUSTIN, District Judge.

Plaintiffs seek declaratory and injunctive relief against the policy of the Illinois Department of Public Aid, which denied benefits claimed on behalf of an unborn child under the Aid to Families with Dependent Children ("AFDC") Program. Jurisdiction is predicated upon 28 U.S.C. §§ 1343(3) and (4), 2201, and 2202 (1970). Because this case can properly be decided on the basis of the Supremacy Clause of the Constitution, a three-judge court need not be convened. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194 (1965). For the reasons stated below, summary judgment is granted in favor of plaintiffs. The parties are granted twenty days leave to submit proposed orders for final relief.

At the time this suit was brought, Sylvia Wilson was still pregnant with her daughter, Mariama. Mrs. Wilson had applied for AFDC benefits with the Departments of Public Aid of the State of Illinois and Cook County, but her application was denied because Illinois' interpretation of "child" excludes unborn children from the category of those eligible for such benefits, even though unborn children would qualify under federal standards. It is uncontroverted that her application was satisfactory in all other material respects. Hence, the issue presented in this suit is the validity of that exclusion.

Unborn children are entitled to receive AFDC benefits under the eligibility requirements of the Department of Health, Education and Welfare. 45 C. F.R. § 233.90(c). The fact that § 233.-90(c) may appear to allow the states some leeway to vary from the federal standards and the fact that the Department may have approved of Illinois' present policy are irrelevant here because in Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), the Supreme Court stated at 286, 92 S.Ct. at 505:

> . . . King v. Smith [392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)] establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance, under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause.

*Accord*, Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). Moreover, defendants' attempts at a statutory construction favorable to their case are unconvincing and their fears regarding a duplication of benefits under other state welfare schemes have already been answered by the Chief Justice's concurring opinion in Carleson v. Remillard, *supra*. Therefore, the Supremacy Clause requires that the challenged Illinois policy fall in deference to the federal Social Security Act.

Finally, this court grants plaintiffs' request to add Mariama Wilson as a party plaintiff, but denies leave to proceed as

a class because a class action is unnecessary in view of the fact that the Illinois policy has been declared unconstitutional. Both sides are invited to submit within twenty days proposed orders granting final relief. Plaintiffs' motions for a temporary restraining order and a preliminary injunction will be held under advisement until then.

### SUPPLEMENTAL OPINION

Both parties have presented motions to vacate, alter, or amend this court's opinion of December 26, 1972. Plaintiffs are dissatisfied with the ruling on their request for leave to proceed as a class, while defendants challenge the decision on its substantive merits and, as an afterthought, they also challenge the order of September 11, 1972 in which I denied plaintiffs' request for the convening of a three-judge court. For the reasons stated below, plaintiffs are granted leave to proceed as a class, except for purposes of determining compensatory damages involving the consideration of collateral facts regarding individual claimants. Defendants' motion to vacate, alter, or amend is denied.

### I. *Three-Judge Court*

■ Defendants' motion to vacate the judgment of December 26, 1972 is based in part on the denial of plaintiffs' request for a three-judge panel under 28 U.S.C. § 2281, despite the fact that the complaint contains substantial constitutional claims in addition to an asserted conflict between federal and state law. Defendants' arguments, however, overlook the well-settled rule that such requests must not be granted liberally, but may be allowed only if they satisfy the strict requirements of the statute. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). In this case the request for a three-judge court was denied for two reasons.

■ First, although the policy challenged here is one of statewide application, the parties appear to agree that it is not embodied in a state statute or or-

der, as is required by § 2281. Plaintiffs' complaint does not attack the constitutionality of Article IV of the Illinois Public Aid Code, Ill.Rev.Stat. Ch. 23 § 4–1 through § 4–11 (Smith-Hurd 1968), or of a regulation issued thereunder. Rather, plaintiffs challenge the constitutionality of an unwritten interpretation of a statute that is constitutional on its face. Under these circumstances the request for a three-judge court must be denied. Dorado v. Kerr, 454 F.2d 892 (9th Cir.), cert. denied, 409 U.S. 934, 93 S.Ct. 244, 34 L.Ed.2d 188 (1972); Benoit v. Gardner, 351 F. 2d 846 (1st Cir. 1965); Hunt v. Edmunds, 328 F.Supp. 468 (D.Minn.1971).

■ But, even if the challenged policy was embodied in a state statute or administrative order, the convening of such a panel would clearly be premature until the disposition of plaintiffs' supremacy clause claims, particularly at a time when § 2281 has been sharply criticized for unduly burdening federal judicial resources. *See, e. g.,* Ammerman, Three-Judge Courts: See How They Run!, 52 F.R.D. 293 (1971). It is clear that a single district judge has the power to enjoin the enforcement of a statewide policy under the supremacy clause and that, in order to avoid the needless determination of constitutional issues, the supremacy clause claim should be decided first. Wyman v. Rothstein, 398 U.S. 275, 276, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970); Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Dandridge v. Williams, 397 U.S. 471, 475–477, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Moreover, even if a three-judge court is convened, the most appropriate course would be for that panel to remand the case to a single judge for a determination of the statutory claim. Rosado v. Wyman, *supra*; Kelly v. Illinois Bell Telephone Co., 325 F.2d 148 (7th Cir. 1963); Saddler v. Winstead, 327 F. Supp. 568 (N.D.Miss.1971). Therefore, a three-judge court need not be convened unless there has been a resolution of the

statutory claim in a manner unfavorable to plaintiffs.[1]

Although this may require the piecemeal litigation of plaintiffs' claims, proceeding in this fashion is necessary, even when a three-judge panel has been convened, because of the principle of avoiding the needless resolution of constitutional issues. Moreover, as a practical matter, suits challenging the validity of state AFDC regulations are commonly resolved on the supremacy clause alone. *See, e. g.,* Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). Therefore, a three-judge panel request at this point in the litigation is at best premature and, as indicated above, probably improper in any event.

## II. *Class Action*

In this court's order of December 26, 1972, plaintiffs were denied leave to proceed as a class "because a class action is unnecessary in view of the fact that the Illinois policy has been declared unconstitutional." That ruling will be reconsidered in light of plaintiffs' requests for retroactive benefits and for notice to other members of the class of their rights under this decision.

■ It is now well-settled that "the class action is an appropriate procedure in welfare cases." Fischer v. Weaver, 55 F.R.D. 454, 458 (N.D.Ill.1972), citing, Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Serritella v. Engelman, 339 F.Supp. 738 (D.N.J.1972); Rodriguez v. Swank, 318 F.Supp. 289 (N.D.Ill.1970), aff'd mem.,

403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677 (1971). Hence, the next question is whether the proposed class meets the requirements of Rule 23.

■ Plaintiffs seek to represent a class "composed of all women whose pregnancies have been medically determined, and their unborn children, who meet the eligibility conditions for AFDC, but are denied AFDC until the actual birth of the child." Complaint ¶ 5. Of course, the class is also limited to the geographic boundaries of the State of Illinois. This court finds that there are questions of law and fact common to the class, that the claims of the named parties typify those of the class, and that the representative parties will fairly and adequately protect the interests of the class. Furthermore, the class is so numerous that joinder of all members is impractical. *See* Exhibit attached to plaintiffs' Motion to Maintain Class Action. Finally, the action also satisfied any one of the three alternatives to Rule 23(b). Under these circumstances, "a court may not deny class status [simply] because there is no 'need' for it." Fujishima v. Board of Education, 460 F.2d 1355, 1360 (7th Cir. 1972).

Moreover, a class action is in fact necessary to enable plaintiffs and others similarly situated to secure the full relief to which they are entitled. The complaint in this case is not limited to a request for declaratory and injunctive relief against the operation of an unconstitutional state policy. Rather, it asks this court to order "payment of all assistance benefits wrongfully denied and withheld" as a result of the Illinois poli-

---

1. The court is aware of a contrary holding in Grubb v. Sterrett, 315 F.Supp. 990 (N.D.Ind.), aff'd mem., 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970), but is of the opinion that the progress of that litigation at the district level demonstrates the wisdom of proceeding as a single judge until it becomes necessary to decide the fourteenth amendment claims. Thus, the three-judge panel in *Grubb* properly confined its ruling to the supremacy clause in order to avoid the unnecessary determination of other constitutional issues. But, in so doing, a court of three judges accomplished nothing more than that which was already within the power of one judge. Today's decision attempts to prevent that anomaly without prejudicing the parties' rights to a three-judge court should it subsequently become necessary to decide plaintiffs' fourteenth amendment claims and should it appear that these claims otherwise meet the statutory requirements of § 2281.

cy toward unborn children. Since members of the class are entitled to notice that they are now eligible for aid, Doe v. Swank, 332 F.Supp. 61 (N.D.Ill.) aff'd mem., 404 U.S. 987, 92 S.Ct. 537, 30 L. Ed.2d 539 (1971), and since they are also entitled to restitution of the benefits unlawfully withheld from them, Alexander v. Weaver, 345 F.Supp. 666 (N. D.Ill.1972), leave is granted to maintain this as a class action with one exception. This court will not allow the case to proceed on a class basis for purposes of determining compensatory damages involving the "consideration of collateral facts regarding individual claimants." Fischer v. Weaver, *supra*, 55 F.R.D. at 458.

### III. *The Definition of Child*

■ Section 402(a)(10) of the Social Security Act, 42 U.S.C. § 602(a)(10), provides "that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." Dependent child is defined in § 406 of the Act, but that section is silent on the question of aid to the unborn. Thus, the issue up for reconsideration today is whether Illinois' policy of refusing to grant AFDC benefits on behalf of unborn children contravenes the Social Security Act and is therefore illegal under the supremacy clause of the Constitution.

■ When confronted with claims involving an alleged conflict between state and federal eligibility standards the Supreme Court has held that a state standard denying assistance to persons eligible under federal standards must fall unless the exclusion is clearly authorized under the Social Security Act itself or its legislative history. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). *Accord,* Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Any doubt must be resolved in favor of granting coverage in order "to avoid the necessity of passing upon the equal protection issue"

that is commonly raised by the federal-state conflict. Townsend v. Swank, *supra,* 404 U.S. at 291, 92 S.Ct. at 508. In order to place this controversy into its proper perspective, it would be well first to review the opinions in the above three cases.

Alabama's "substitute father" regulation was held inconsistent with the definition of "parent" under § 406(a) of the Social Security Act, 42 U.S.C. § 606(a), because neither the Act nor its legislative history justified the denial of AFDC benefits to the children of a mother who cohabits in or outside her home with an able-bodied man. King v. Smith, *supra.* Much like Illinois' assertion that its exclusionary policy towards unborn children is necessary to reduce the number of illegitimate births, *see* 45 C.F.R. § 220.20, Alabama argued that its legitimate interest in discouraging illicit sexual conduct was sufficient to sustain the validity of the challenged regulation. However, the Court rejected such arguments because "Congress has determined that immorality and illegitimacy should be dealt with through rehabilitative measures rather than measures that punish dependent children . . . ." 392 U.S. at 325, 88 S.Ct. at 2137.

In Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971), the Court was called upon to decide whether states participating in AFDC have the option under 42 U.S.C. § 606(a)(2)(B) to deny benefits to needy dependent children between the ages of 18 and 21 who attend a college or university, while granting such benefits to those who attend high school or vocational training school. After reviewing the legislative history of the Act since its inception, the Court noted that, prior to the extension of benefits to college student dependents between 18 and 21, Congress had twice extended AFDC to new age groups and that on each of those prior occasions Congress made it clear that the decision to participate was left to the option of the states. On the other hand, when AFDC benefits were extended to the group in question, the optional

nature of the program was not clearly evidenced from the statute or its legislative history. Hence, it was considered mandatory.

Finally, Carleson v. Remillard, *supra*, considered whether the "continued absence from the home" language of 42 U.S.C. § 606(a) justified California's exclusion of children whose fathers were absent because of military service, even though such children were eligible for aid under the standards set forth in HEW Handbook of Public Assistance Administration, pt. IV, § 3422.2. Just as in the instant case, it was asserted that HEW had the authority to approve state plans denying benefits to such children on the basis that they were optional. But, since neither the statute nor its legislative history clearly supported that assertion, the Court held such coverage to be mandatory.

Thus, plaintiffs correctly characterize the issue in this case as whether the statute itself requires that aid be furnished to unborn children and not whether HEW's own regulations require such aid. In this regard, it is well to remember that "the principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished to *'all eligible individuals.'*" Townsend v. Swank, *supra*, 404 U.S. at 286, 92 S.Ct. at 505. Moreover, contrary to the state's assertion that the doctrine of primary jurisdiction requires the remand of this case to HEW for an initial determination of the merits, when a suit involves a conflict between state welfare policies and federal law, that doctrine is inapplicable because plaintiffs "do not seek review of an administrative order, nor could they have obtained an administrative ruling since HEW has no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs." Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970). Consistent with Rosado v. Wyman, *supra*, however, it should be noted that this court has solicited and considered the views of HEW in the form of an amicus brief.

In support of defendants' position that the AFDC program does not require the payment of benefits to unborn children, HEW contends that unlike the terms "parent" in King v. Smith, *supra*, and "continued absence from the home" in Carleson v. Remillard, *supra*, the meaning of the term "dependent child" in this case is unclear, that it cannot unequivocally be said to include unborn children, and that it therefore should not be so construed. The United States unsuccessfully raised identical arguments at pages 5–7 of its amicus brief in Carleson v. Remillard, *supra*, and there is no reason to give them any greater weight here than in the Supreme Court. Simply stated, this argument amounts to a reversal of the King v. Smith test of eligibility and would authorize the states to exclude persons from AFDC unless the statute or its legislative history clearly made coverage mandatory. That is clearly not the law.

Next, HEW cites its own regulation, 45 C.F.R. § 233.90, which allows but does not require the states to provide such coverage. HEW contends that its authority for making such coverage optional is that the provisions of 42 U.S.C. § 602 are mandatory on the states, while the requirements of 42 U.S.C. § 606, wherein dependent child is defined, are not. As will be shown below, neither the statute nor its legislative history supports this interpretation of the Act.

The requirements for state participation in the federally-aided AFDC program are stated at 42 U.S.C. § 602, which provides the broad procedural guidelines that must be followed in administering AFDC locally. On the other hand, the classes of persons on whose behalf the state may receive matching funds are defined in 42 U.S.C. §§ 606, 607 and 608. The assertion by HEW that the procedural provisions of § 602

are mandatory while those of § 606 are optional with the states is simply unsupported by the language of the statute. Section 606 defines dependent child for purposes of the entire AFDC subchapter of the Act. Nowhere does it authorize the states or HEW to vary from this definition at their option. And, indeed, it appears obvious from the structure of this statute that the children who come within the § 606 standards are the ones whom Congress considered to be most in need of AFDC assistance. Hence, unlike aid to children deprived of parental support by reason of unemployment, which is clearly optional with the states under 42 U.S.C. § 607, aid to children deprived of parental support by reason of the death, continued absence from the home, or physical or mental incapacity of a parent is the essence of the AFDC program and is therefore mandatory. Since the statute does not clearly authorize the exclusion of unborn children from coverage under AFDC, it becomes necessary to examine legislative history.

Inasmuch as Congress does not act in a vacuum, it is proper to begin an examination of the legislative history of the word child with its dictionary definition, which is "an unborn or recently born human being." Webster's Third New International Dictionary (1969). Furthermore, any uncertainty about the meaning of the word child should be resolved in light of the broad remedial goals of the AFDC program, which are stated at 42 U.S.C. § 601.[2] Thus, defendants' analogies to the status of unborn children for purposes of inheritance, federal taxation, abortion, or actions to recover for wrongful death or pre-natal injuries are simply inapposite. For example, despite current public criticism to the contrary, the federal income tax is designed to collect revenue and not to be the vehicle for public charity. Hence, it is quite logical to deny specific deductions for unborn children while simultaneously allowing mothers to collect AFDC on their behalf.[3] Similarly, denying the unborn the right to recover for pre-natal injuries until they are born simply treats these potential tort plaintiffs no differently than anyone else, for it is well-settled that the right to recover in tort is personal and abates on the death of either party. See generally 1 C.J.S. W Abatement and Revival § 138 (1936); 1 Ill.Law & Practice Abatement § 81 (1953). In other words, it should be obvious that the mere fact that unborn children are treated differently than other parties for some legal purposes does not automatically imply that Congress did not intend to make them eligible for AFDC, particularly when the rights of the unborn to receive medical and financial support have long been recognized by the courts as legitimate interests worthy of protection. *See generally* Note, The Law and The Unborn Child: The Legal and Logical Inconsistencies, 46 Notre Dame Law, 349 (1971).

Finally, even if the unborn child was not within the contemplation of Congress at the time the Act was passed, HEW and its predecessors have authorized the payment of benefits on behalf of the unborn since at least 1941. The last Congress recognized the prevailing interpretation of 42 U.S.C. § 606(a) as including the unborn when

---

2.  § 601.  Appropriations

    For the purposes of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain

or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part.

3.  Note that unborn children are not completely ignored under federal income tax laws because they derive at least an indirect financial benefit from their parents' medical expense deductions.

both Houses proposed amendments that would prohibit AFDC payments on behalf of unborn children.[4] But, those amendments were not enacted into law, Pub.Law 92–603, 86 Stat. 1329 (H.R. 1). This bit of legislative history at least establishes the fact that Congress recognizes that unborn children are presently entitled to AFDC benefits and that the language of the Social Security Act must itself be amended to overturn this interpretation. Therefore, I must conclude that unborn children are entitled to receive AFDC benefits.

### IV. *The Definition of Parent*

The Social Security Act provides that AFDC may be claimed on behalf of a child who is "deprived of *parental* support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a *parent*. . . . " 42 U.S.C. § 606(a) (emphasis added). "Parent" has been defined as an individual who owes "the child a state-imposed legal duty of support." King v. Smith, 392 U.S. 309, 329, 88 S. Ct. 2128, 2139, 20 L.Ed.2d 1118 (1968); Carleson v. Remillard, 406 U.S. 598, 603, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). Therefore, defendants assert that unborn children cannot be eligible for AFDC because they cannot be said to have parents until after they are born and because nowhere does a putative parent's legal duty to support his offspring begin before the child is born. Neither argument is convincing.

▮ In order to avoid what would prove to be a fruitless exercise in semantics, this court is of the opinion that the word "parent", like the word "child", should be interpreted in light of the broad remedial purposes of the Social Security Act stated at 42 U.S.C. § 601 and in light of the standards of statutory interpretation set forth in Carleson v. Remillard, *supra;* Townsend v. Swank, *supra;* and King v. Smith, *supra.* Viewed from that perspective, the word "parent" in § 606(a) includes the putative parents of unborn children.

▮ Defendants' second assertion, that the Supreme Court has defined parent to mean only an individual owing the child a legal duty of support, is similarly without merit because it overlooks the fact that the support of an unborn child is necessarily given through its mother in the form of proper nutrition and medical care. Surely these defendants cannot seriously deny that such things are considered necessaries for which a husband is liable under the common law of Illinois and most every other state. Moreover, under the Illinois Paternity Act the mother of an illegitimate child is entitled to institute paternity proceedings while still pregnant and, among other things, recover maternity expenses. Ill.Rev.Stat. Ch. 106¾, §§ 53, 54 (Smith-Hurd Supp. 1973). And, inasmuch as an unborn child program has been in existence for at least the last 25 years and has been recognized as such by the last Congress, it seems that the niceties of how the unborn child actually receives its support have never before troubled the federal authorities. Therefore, I find that an unborn child is not disqualified from AFDC merely because its natural father fulfills his obligation to it by providing the support directly to the mother and thus indirectly to his

---

4. The House Ways and Means Committee on H.R. 1, Rep. No. 92–231, states, at page 184:

> Your committee wants to make clear that an unborn child would not be included in the definition of a child. This will preclude the practice, now used in the AFDC program in some States, of finding that an unborn child does meet the definition, thereby establishing a "family" even before the child is born.

And the Senate Finance Committee Report, Sen.Rep. No. 92–1230, states at page 108:

> Regulations of the Department of Health, Education, and Welfare permit Aid to Families with Dependent Children payments for a child who has not yet been born. The committee bill would make unborn children ineligible for AFDC.

child. Indeed, even defendants must be at a loss to conceive of any other way such support could be provided.

## V. *Remedies*

My original opinion was written in response to plaintiffs' motion for summary judgment on the issue of liability alone. Since then, plaintiffs have sought the entry of a preliminary injunction enjoining defendants from failing to furnish AFDC to needy pregnant mothers and their unborn children who meet all the eligibility conditions for AFDC save the Illinois requirement limiting AFDC to children who are born. At this time I am prepared to grant such an injunction and hereby direct the clerk of this court to enter such an order. However, inasmuch as there remain substantial issues pertaining to the scope of other relief sought herein, the parties are granted 14 days from today to submit their proposals for a final order and any supporting memoranda they might wish to file. In particular, the court considers the issues of the form of notice to the plaintiff class and the scope of compensatory relief to be viable topics of discussion.