**Marie OTTMAN**

v.

**Dean FISHER et al.**

Supreme Judicial Court of Maine.

April 30, 1974.

Locke, Campbell & Chapman by Harry N. Starbranch, Augusta, for plaintiff.

Robert B. Calkins, Asst. Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

Mrs. Marie Ottman, appellee herein, assumed actual custody and support of three minor children who were related to her only as first cousins once removed.

Her application for Aid to Families with Dependent Children (AFDC) [1] was at first granted and later withdrawn by appellant herein. Appeal from such withdrawal was seasonably taken, Rule 80B, Maine Rules

of Civil Procedure, being used as the vehicle therefor.

Such appeal was fruitful.

Dean Fisher, Commissioner of Health and Welfare of the State of Maine, then seasonably filed this appeal.

We deny the appeal.

The controversy affords us a view of the curious governmental and administrative procedures which are often spawned when sovereign states and the federal government engage in so-called "cooperative federalism" for the purposes of extending benefits to the citizenry.

Though not formally named in the litigation which led to this appeal, the real parties in interest here are three young children whose actual custody and support was assumed by appellee and who were the ultimate beneficiaries of the disputed AFDC grant.

The children's mother and father had been divorced.

Custody of the children had been awarded the father.

Appellee took the children into her home and assumed responsibility for their support, when the father was admitted to a mental institution.

The mother's whereabouts is unknown.

On August 23, 1971, the Commissioner determined, after a hearing, that the three children were "first cousins once removed" of appellee, and that as such appellee qualified as an AFDC recipient on behalf of the children.[2]

---

1. AFDC was first established by the Social Security Act of 1935, 49 Stat. 627, as amended, 42 U.S.C.A. §§ 601–610. As stated in Goldberg v. Kelly, 397 U.S. 254, 256, 90 S.Ct. 1011, 25 L.Ed.2d 287, 292 (1970):
 "It [AFDC] is a categorical assistance program supported by federal grants-in-aid but administered by the States according to regulations of the Secretary of Health, Education, and Welfare."
 In Maine, the AFDC program is operated by the Department of Health and Welfare

under the authority granted in 22 M.R.S.A. § 3741, which states:
 "The department is authorized to administer and operate a program of aid to dependent children within the Federal Social Security Act and any amendments and additions thereto."

2. In order to be eligible for AFDC, the children on whose behalf the grant is made must, among other requirements, be living with their "father, mother, grandfather,

In this initial decision the Commissioner stated that

" . . . a 'first cousin once-removed' is intended as a proper recipient of a grant for eligible children on the basis that such a person is recognized as being in as close kinship as one designated 'great-great.' " [3]

The Commissioner added that this interpretation "would appear to carry out the spirit of the regulation."

Approximately two months after issuing this decision the Commissioner received a letter from the Commissioner of the Regional Office of HEW, situated in Boston, Mass. In this letter, the Regional Commissioner stated that he had

" . . . reviewed the recommendation of your Department Fair Hearing Officer with respect to the denial of AFDC to a child living with a cousin once removed, on the basis that the degree of relationship required by Section 406(a) of the Social Security Act does not exist." [4]

The letter then continued "first cousins once removed are not relatives for purposes thereof." (See 406(a) Social Security Act.)

This interpretation was based upon Sec. 3432 of Part IV of the HEW Handbook of Public Assistance, which in turn interpreted 42 U.S.C.A. § 606(a), and from which the language in 45 C.F.R. 233.90, (n 2), was drawn. Since he discerned in these source materials no expansion of the term "first cousin," the Regional Commissioner opined that the term includes only first cousins "as such" and not "second cousins," which he equated to "first cousins once removed."

As a direct result of the Regional Commissioner's letter, a second "fair hearing" was held in appellee's case, following which, on January 5, 1972, appellant reversed himself and decided "that the grant be closed."

In this latter decision, appellant stated:

"At issue [in the hearing] was whether a first-cousin once removed is a proper payee. Social Security Law specifies who may be a payee. It permits 'great-great' but is silent on 'first cousin once removed.' Originally it had been ruled that, because both these designations are equally near to the grantee, a 'first cousin once removed' was a proper payee. *The Regional office of Health, Education and Welfare has overruled this rul-*

grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece, . . . ."
42 U.S.C.A. § 606(a).
The Department of Health, Education and Welfare has interpreted this section to include
"Any blood relative, including those of half-blood, and including first cousins, nephews, or nieces, and persons of preceding generations as denoted by prefixes of grand, great, or great-great; . . . ."
45 C.F.R. 233.90
The Maine Department of Health and Welfare has adopted a similar interpretation, as set out in the Maine Public Assistance Payments Manual, Chap. II, Sec. C:
"Specified relatives who may apply for and receive assistance on behalf of the child are:
. . . . .
4. Legal grandfather, grandmother, uncle or aunt or the same relatives of preceding

generations as denoted by prefixes of great and great-great, or first cousin, nephew or niece;"

3. This analysis of relationships by the Commissioner is only partially correct. By the civil method of determining kinship, 18 M.R. S.A. § 1002, a "first cousin once removed" does stand in the same degree to the subject (fifth) as does a great-great aunt or uncle. However, it is *not* equivalent to a great-great grandparent, which stands in the fourth degree.

4. We do not have before us any "recommendation" of a Fair Hearing Officer; only the decision by appellant Commissioner. We are certain, however, that the Regional Commissioner's letter was focused upon the ruling allowing the grant, rather than upon any prior or subsidiary recommendations by Commission staff.

*ing. The Department must therefore reverse itself."* (Emphasis added)

On appeal to the Superior Court, the presiding Justice remanded to the Commissioner for action not inconsistent with that Court's ruling that

" . . . a first cousin once-removed is in the fifth degree and that a second cousin is in the sixth degree and therefore a first cousin once-removed is not the same as a second cousin. Therefore, by inference, a first cousin includes a first cousin once-removed. "And finally, it is wholly consistent with the purpose of the statute that a first cousin once-removed be included within the breadth of the statute."

Without yet considering the correctness of the reasoning in the ruling below, we feel it will be helpful to those charged with administering the AFDC program to examine the propriety of the manner in which the Commissioner revoked appellee's AFDC benefits in the first instance, on the basis of the letter of opinion from the HEW Regional Commissioner.

We are not here concerned with the formal procedural steps which preceded the second *"fair hearing"* after which the Commissioner terminated payments. Nor need we consider the quality of the hearing itself, in terms of the procedural rights and safeguards to which appellee, as a welfare recipient, was constitutionally entitled. See Goldberg v. Kelly, supra (n 1); Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). These particular matters were not raised below, nor are they raised here, and we note that appellee's complaint in Superior Court was based solely on the claim that the Commissioner's second decision

" . . . is founded upon a misconception of law and accordingly is arbitrary and capricious and has prejudiced and aggrieved and directly affected the rights of the plaintiff."

■ The apparent satisfaction of procedural formalities does not, however, insulate the Commissioner's decision from the challenge that it is "arbitrary and capricious" for other reasons.

We have held that "administrative agencies are constitutionally required to adhere to the *'fundamentals of fair play.'"* In Re Maine Clean Fuels, Inc., Me., 310 A.2d 736, 746 (1973). In addition,

" . . . the minimal requirements of administrative *'fair play,'* something less than that demanded of our courts but something more than unfettered administrative action, are to be determined *'from case to case in accordance with differing circumstances.'"* *Id.* at 746. (Citations omitted)

In a similar vein but more specifically, the United States Supreme Court has addressed the relationship of welfare benefits to constitutional guarantees. In Goldberg v. Kelly, supra, wherein the Court focuses upon procedural due process in holding that an evidentiary hearing is required before withdrawal of public assistance payments, Mr. Justice Brennan expressed the view of five Court members that

"Such benefits are a matter of statutory entitlement for persons qualified to receive them. (*Footnote omitted*) Their termination involves state action that adjudicates important rights. The constitutional challenge cannot be answered by an argument that public assistance benefits are 'a "privilege" and not a "right"'. Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 1327, 22 L.Ed.2d 600, 611 (1969). Relevant constitutional restraints apply as much to the withdrawal of public assistance benefits as to disqualification for unemployment compensation, Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); or to denial of a tax exemption, Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); or to discharge from public employment, Slochower v. Board of Higher Education, 350 U.S.

551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)."
397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25
L.Ed.2d 287, 295–296.

In the case at bar we entertain no doubt that the Commissioner's second ruling on appellee's eligibility for AFDC payments was preordained by the letter from the Regional HEW Office, which the Commissioner apparently regarded as a directive from a superior binding upon him as a subordinate. The Commissioner himself made this clear when he said

"The Regional Office of Health, Education and Welfare has overruled this ruling. The Department must therefore reverse itself."

■ We infer from this that the appellant erroneously, though in good faith, felt the issue as to the applicable law was completely closed and that he lacked authority to reexamine the law and exercise his own judgment.

■ Based upon our conception of the relationship between appellant Commissioner and the Regional HEW Officer, we find that the mere fact that the AFDC payments were terminated solely on the basis of the Regional Commissioner's letter, rendered the "fair hearing" preceding the termination an empty exercise violative of the "minimal requirements of administrative *'fair play,'*" In Re Maine Clean Fuels, Inc., supra, and in contravention of the requirements of due process.

The basic purposes of "fair hearings," as described in the Public Assistance Payments Manual, appear to be the presentation of evidence for the purpose of facilitating fact-finding, and the provision of an opportunity for a recipient of assistance to present a position, *pro se* or through counsel, on eligibility questions, agency interpretations of the law, or modification, suspension or discontinuance of assistance payments entirely. Public Assistance Payments Manual, Chap. I, Sec. C, p. 1.

The hearing in question here, by virtue of the circumstances which occasioned its being called, could not have satisfied any of these ends.

Appellee's opportunity to defend her position was no opportunity at all.

The facts and circumstances surrounding her case were already settled when the Fair Hearing Officer was appointed by appellant Commissioner.

The decision on the matter was formulated before the hearing was commenced.

That decision was founded upon appellant's incorrect allegiance to a federal official's judgment.

We are aware that federal participating funds for State AFDC programs may be terminated under circumstances in which a state AFDC plan is found not to comply with federal requirements embodied in the Social Security Act or correlative HEW regulations. 42 U.S.C.A. § 604; see generally King v. Smith, 392 U.S. 309, 316, 88 S.Ct. 2128, 20 L.Ed.2d 1118, 1125 (1968); Rosado v. Wyman, 397 U.S. 397, 406 (n 8), 90 S.Ct. 1207, 25 L.Ed.2d 442, 452 (1970); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Arizona Dept. of Public Welfare v. Department of Health, Education & Welfare, 449 F.2d 456 (9th Cir. 1971), cert. den. 405 U.S. 919, 92 S.Ct. 945, 30 L.Ed.2d 789 (1972); Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.1969), affd. 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969); In Re Fowler, Vt., 288 A.2d 463 (1972).

Generally, state noncompliance has arisen in the context of state restrictions upon benefits and related rights otherwise secured under the federal assistance scheme. Discrepancies between federal and state practices have been eliminated in most cases by means of judicial invalidation of inconsistent state provisions, rather than by

wholesale withdrawal of federal funds under the authority of 42 U.S.C.A. § 604.[5]

Thus, in a Supreme Court trilogy comprised of King v. Smith, supra, Townsend v. Swank, supra, and Carleson v. Remillard, supra, the rule has evolved that

". . . at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." Townsend v. Swank, supra, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448, 453.

The first in time of the three cases, King v. Smith invalidated as inconsistent with Sec. 406(a) of the Social Security Act, an Alabama regulation defining "parent" in such a way that needy children otherwise eligible for AFDC benefits under federal standards were excluded if the mothers of such children were cohabiting with other men, notwithstanding the continued absence of the father.

Adopting and expanding on the King v. Smith reasoning, the Supreme Court in *Townsend* similarly invalidated an Illinois statute and regulation excluding from AFDC eligibility college students 18–20 years of age, when that class was specifically placed within the definition of "dependent child" eligible for AFDC under the Social Security Act.

The third such case, Carleson v. Remillard, struck down a California regulation denying AFDC to so-called "military orphans," whose fathers were not deemed to be "absent" for California AFDC purposes because of active military service elsewhere. Writing for a unanimous Court, Mr. Justice Douglas restated the *King* and *Townsend* holdings in finding the California regulation impermissibly at odds with the federal approach, and clarified that the Social Security Act

". . . places on each State participating in the AFDC program the requirement that '*aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals.*' '*Eligibility,*' so defined, must be measured by federal standards." 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L. Ed.2d 352, 355 (1972).

In a series of more recent federal decisions, the rule of the Supreme Court trilogy has been applied to invalidate various state regulations denying AFDC benefits to unborn children,[6] in the face of express recognition of eligibility for such children in HEW regulations, and a longstanding (since 1941) HEW practice of permitting payments to this class. Doe v. Lukhard, 363 F.Supp. 823 (E.D.Va.1973), affd. on other grounds 493 F.2d 54 (4th Cir. 2/26/74); Harris v. Mississippi State Department of Public Welfare, 363 F.Supp. 1293 (N.D.Miss.1973); Green v. Stanton, 364 F.Supp. 123 (N.D.Ind.1973); Alcala v. Burns, supra, n. 6; Wilson v. Weaver, 358 F.Supp. 1147 (N.D.Ill.1973); *contra* Parks v. Harden, 354 F.Supp. 620 (N.D.Ga. 1973); Poole v. Endsley, 311 F.Supp. 1379 (D.N.Fla. 3/4/74).

As expressed by the District Court in Doe v. Lukhard, the established HEW pol-

---

5. In fact, federal initiation of *administrative* proceedings to force state conformity with federal welfare standards under penalty of losing participating funds is a rare occurrence. See Comment, "AFDC Eligibility Requirements Unrelated to Need: The Impact of King v. Smith," 118 U.Pa.L.Rev. 1219 (1970).

6. The rationale under which an unborn child is deemed to have rights to AFDC benefits is expressed in Alcala v. Burns, 362 F.Supp. 180 (S.D.Iowa 1973), wherein the Court relied upon medical testimony respecting

". . . the additional needs of the child and mother during this prenatal period and the serious consequences that flow to the family if the nutritional and medical needs of the child are not met during this prenatal period." 362 F.Supp. 180 at 184. Affd. 494 F.2d 743 (8th Cir. 3/29/74).

icy making unborn children eligible was particularly significant, when measured against the State bar to such eligibility,

". . . by virtue of the well-settled rule that '(T)he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction.'" (Citations omitted) 363 F.Supp. 823 at 826.

We do not regard either this rule of deference to administrative interpretation, or the underlying principles of *King, Townsend*, and *Remillard* as requiring a result different from the one we reach today.

First, we view the instant case as unique and therefore distinguishable from those cases which developed and applied the foregoing rules. The facts here present a *federal* policy under which a class of children would be excluded from AFDC benefits, even though under a more liberal Maine policy, embodied in appellant Commissioner's original decision, the class would be eligible.

 Federal case law, it seems, has not addressed this reverse situation. Absent more definite precedent, we are not prepared to read King v. Smith and its progeny as authority for the proposition that a participating state may not have a *more liberal* eligibility standard for AFDC recipients than that required as a *minimum* in the view of one federal official. In other words, we reject the argument that the Supremacy Clause of the Federal Constitution prohibits a State from granting AFDC benefits to needy individuals unrecognized as eligible by at least one HEW spokesman.

 Moreover, we do not regard the "advice" from the Regional Commissioner to appellant here as representing that type of HEW policy, "longstanding" or otherwise, to which we ought pay the deference contemplated by the principle of respect for agency interpretation of the law it administers.

Not only does the letter from the Regional Commissioner lack the force of a regulation promulgated in the official course of HEW operation, but we are also unable to discern any agency-wide adoption, indorsement, or compliance with the policy expressed therein.

It seems instead that the Regional Commissioner, though in apparent good faith, acted under an assumption (alien to this Court) that even though the Maine AFDC *plan* had been deemed satisfactory under federal standards, there attached to him as a federal administrator a legal supervisory or adjudicative authority over case-by-case operation of the State system.

 The conceivable but remote possibility that the appellant Maine Commissioner's first interpretation of the Maine regulation,[7] if inconsistent with the interpretation by the Regional Commissioner of a parallel federal regulation,[8] could result in a challenge to the overall validity of the Maine AFDC program and consequent withdrawal of federal funds, was not a proper factor to consider with respect to a specific adjudicative determination of appellee's continued AFDC eligibility.

 In view of his misplaced reliance upon the Regional Commissioner's opinion, we find that appellant acted arbitrarily and capriciously, and in excess of his statutory authority, in *sua sponte* reviewing appellee's case and withdrawing her benefits.

Although the Commissioner's decision is therefore void, we consider this case to be of sufficient significance to warrant our consideration of the other issue presented: whether first cousins once removed may be

---

7. Public Assistance Payments Manual, Chap. II, Sec. C, p. 1.

8. 45 C.F.R. 233.90.

included in the class of relatives eligible to receive Maine AFDC payments on behalf of dependent children.

◼ We agree with the conclusion of the presiding Justice in the Superior Court that such relatives are permissible recipients under the Maine statute and regulations.

The designations "first cousin," "first cousin once removed," and "second cousin," despite their varying meanings in lay usage, describe legal relationships of the fourth, fifth and sixth degree, respectively, by the civil law method of computing kinship. 23 Am.Jur.2d, Descent and Distribution, Sec. 60.

We neither intimate nor decide whether a second cousin may qualify for Maine AFDC benefits, since that issue is not before us.

We do find, however, that the difference in one degree between first cousins and first cousins once removed does not *ipso facto* exclude the latter class from the AFDC program.

Payments to other relatives in the fifth degree of kinship, *e. g.*, great-great aunts and uncles, are permitted under both the federal *and* Maine regulations.[9] It is thus clear that the regulations embody no flat prohibition upon AFDC payments to relatives beyond the fourth degree. First cousins once removed cannot, therefore, be excluded for the sole reason that they exceed by one degree first cousins *per se*, as appellant suggests.

We likewise reject appellant's reasoning that the narrow interpretations of the word "cousin" adopted in will construction cases, including Ferguson v. Johnson, 159 Me. 4, 187 A.2d 59 (1963), are in any way controlling on the meaning of the words "first cousin" as used in the AFDC context.

◼ This is so because in interpreting the words of the Social Security Act we must be guided by the purpose of AFDC as described in 42 U.S.C.A. § 601. In interpreting the words of a will the lodestone is the intention of the testator as gleaned, not only from the words employed, but if such words are ambiguous, or subject to more than one meaning, in the context of the amount of his estate, his general purpose as ascertained from reading the entire instrument, and the relationship which existed between him and the claimed beneficiaries of his largesse. See Robert W. Traip Academy v. Rose Cook Staples et al., Me., 317 A.2d 816 (1974).

It serves no useful purpose to look to the meaning courts have given a word used in wills in ascertaining the meaning of a word used in the statute now under consideration.[10]

As a final argument that first cousins once removed should be denied AFDC benefits, appellant cites a lone federal decision reaching such a conclusion. We have examined the brief decision of the District Court in the case, Cobb et al. v. Department of Public Welfare, unrecorded, (M. D.Fla.1970), affd. per curiam 441 F.2d 266 (5th Cir. 1971), and find therein no forceful reasoning in support of the Court's result which would alter our own analysis of the Maine or federal regulation.

More important to our agreement with the presiding Justice here, however, is

---

9. See Notes 2 and 3, supra.

10. In one of the series of "unborn child" cases, Wilson v. Weaver, supra, the District Court rejected a similar contention that AFDC definitions might be drawn from other legal uses of the terminology:

"... any uncertainty about the meaning of the word child should be resolved in light of the broad remedial goals of the

AFDC program .... Thus, defendant's analogies to the status of unborn children for purposes of inheritance, federal taxation, abortion, or actions to recover for wrongful death or pre-natal injuries are simply inapposite." 358 F.Supp. 1147 at 1154.

See also Alcala v. Burns, supra, 362 F.Supp. 180, 186.

what we regard as the compelling spirit of the AFDC program itself.

■ It is clear that Maine has adopted, through 22 M.R.S.A. § 3741, the same goals for its AFDC program as those adopted by Congress. Westberry v. Fisher, 297 F.Supp. 1109, 1114 (D.Me.1969). Those goals are stated in 42 U.S.C.A. § 601, which provides that AFDC is

"(F)or the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support· and personal independence consistent with the maintenance of continuing parental care and protection, . . . . ”

We interpret this broad statement of benevolent purpose in light of the United States Supreme Court's recognition that

"(T)here is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need . . . . ” King v. Smith, supra, 392 U.S. 309, 318, 88 S.Ct. 2128, 2134, 20 L. Ed.2d 1118, 1126.

Within this latitude exercisable by the State of Maine, and consistent with the liberal design of the AFDC program as it exists in Maine, we hold, as did the Court below, that Mrs. Ottman's AFDC payments must be continued.

The entry must be,

Appeal denied.

All Justices concurring.