499 F.2d 155
 23 A.L.R.Fed. 222
 Sylvia WILSON et al., Plaintiffs-Appellees,
v.
Edward T. WEAVER, Director, Illinois Department of Public
Aid, and David L. Daniel, Director, Cook County
Department of Public Aid, Defendants-Appellants.
Sally GREEN et al., Plaintiffs-Appellees (Cross-Appellants),
v.
Wayne A. STANTON et al., Defendants-Appellants (Cross-Appellees).
 Nos. 73-1541, 73-1749, 73-1834 and 73-1835.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 2, 1973.
Decided May 9, 1974, Rehearing and Rehearing En Banc Denied
July 25, 1974.
 
 William J. Scott, Atty. Gen., Herbert L. Caplan, Asst. Atty. Gen., Bernard Carey, State's Atty., Fredric B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendants-appellants.
 Theodore L. Sendak, Atty. Gen., John H. Meyers, Asst. Atty. Gen., Indianapolis, Ind., Philip H. Larmore, Ft. Wayne, Ind., for Stanton.
 Sheldon H. Roodman, Lorelei Borland, Chicago, Ill., for plaintiffs-appellees.
 Linda D. Moskowitz, Seymour Moskowitz, Gary, Ind., Robert E. Gordon, Chicago, Ill., Ivan E. Bodensteiner, Valparaiso University School of Law, Valparaiso, Ind., for Sally Green.
 Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and PELL, Circuit Judge.
 SWYGERT, Chief Judge.
 
 
 1
 The defendants, the States of Illinois and Indiana, appeal from separate decisions favorable to plaintiffs in Wilson v. Weaver, 358 F.Supp. 1147 (N.D.Ill.1972), and Green v. Stanton, 364 F.Supp. 123 (N.D.Ill.1973). Both cases raise identical issues for our disposal; accordingly, we have consolidated the appeals in the instant action.
 
 
 2
 Plaintiffs represent a class composed of women whose pregnancies have been medically determined and their unborn children. In the district courts plaintiffs sought injunctive and declaratory relief from the defendants' denials of Aid to Families with Dependent Children (AFDC) benefits to the pregnant mother and her unborn child until the actual birth of the child. The denials were in accordance with the respective welfare policies of Illinois and Indiana.
 
 
 3
 The plaintiffs contend that the state policy involved is contrary to the requirements of the federal Social Security Act and, consequently, is invalid under the Supremacy Clause of the Constitution. Under section 402(a)(10) of the Social Security Act, 42 U.S.C. 602(a)(10), it is required that '. . . aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals . . ..' Plaintiffs assert that an unborn child is a dependent child within the contemplation of section 402(a) (10) of the Social Security Act and that consequently the unborn child and mother are entitled to AFDC benefits. If it is established that an unborn child is eligible under the Act, then it necessarily follows that a state policy of denying AFDC benefits prior to birth is in conflict with the federal statute and therefore invalid. King v. Smith, 392 U.S. 309, 333, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Townsend v. Swank, 404 U.S. 282, 285, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); Carleson v. Remillard, 406 U.S. 598, 600, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).
 
 
 4
 The basic issue is whether the term 'dependent child' as utilized in section 402(a)(10) includes an unborn child. The district courts in these cases held that the term dependent child encompasses the unborn child. We are in agreement. In addition we must address as a related issue the question of the propriety of granting retroactive payment of AFDC benefits previously denied.
 
 
 5
 * The Supreme Court has provided a guide for determining eligibility for AFDC benefits. That guideline announced in King v. Smith and amplified in Townsend v. Swank, supra, at 286; and Carleson v. Remillard, supra at 600, provides:
 
 
 6
 King v. Smith establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. 406 U.S. at 600.
 
 
 7
 This test necessitates two inquiries: (1) whether an unborn child is a person eligible for assistance under federal AFDC standards and, (2) whether this otherwise eligible class consisting of unborn children is expressly excluded by Congress from receiving AFDC benefits. Admittedly, the Social Security Act and its legislative history are barren of any clear congressional authorization to exclude unborn children from participating in the AFDC program. Our concern therefore centers exclusively on the first inquiry, namely, whether an unborn child is a 'dependent child.'
 
 
 8
 Although the term 'dependent child' is defined in section 406(a) of the Act, that section offers no assistance in determining whether an unborn child is within or without the coverage of the Act.[1] In a similar vein the legislative history of the Act is silent regarding the eligibility of an unborn child. Nor do we consider an analysis of the plain meaning of the statute particularly enlightening for arguably both appellants and appellees can maintain a steadfast position about the meaning and usage of the word 'child' in the Act.
 
 
 9
 On balance we perceive no persuasive reasons or indications from the Social Security Act or its legislative history to assist our construction. Support for inclusion of the unborn child within the scope of the Act emanates however from two sources: we give great weight to the long-standing administrative interpretation by the Department of Health, Education and Welfare (HEW) and its predecessors that an unborn child is a dependent child within the contemplation of section 406(a); and, the grant of benefits to the unborn child is entirely consistent with and in furtherance of the purpose of the Act.
 
 
 10
 Since 1941 HEW and its predecessors have consistently interpreted the Act so as to provide benefits to unborn children who in all other aspects save birth qualify as needy dependent children. The rule of judicial deference to long-standing administrative interpretations needs no repetitious citation of authority for it is well-established
 
 
 11
 . . . that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong, especially when Congress has refused to alter the administrative construction.[2]
 
 
 12
 As previously noted there are no persuasive indications-- let alone those that attain the stature of compelling-- that would indicate that HEW's interpretation is wrong. Moreover, it is most noteworthy that no congressional steps were taken to reverse this administrative interpretation until 1972. Recognizing that HEW construed the Act to include the coverage of the unborn and that such a construction was not unreasonable, the 92d Congress set out to explicitly exclude the unborn from the coverage of the Act-- a fact which was not implicit from the language of the Act or the legislative history surrounding its passage in 1935. The efforts of the 92d Congress however fell short of the mark with the result that the specific legislation intended to nullify HEW's interpretation failed to pass. Consequently, the federal standard encompassing the unborn child continues to endure despite congressional efforts to the contrary.
 
 
 13
 It cannot be gainsaid that coverage of the unborn child is consistent with and in furtherance of the purposes of the Social Security Act. The granting of benefits to assist the development, care and nutritional needs of the unborn child is consonant with the Act's underlying policy of 'encouraging the care of dependent children.'[3] The paramount goal of AFDC is protection of needy children. King v. Smith, 392 U.S. 309, 325, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The providing of benefits to unborn needy children fully implements attainment of that goal.[4] Accordingly, we hold that the state policies of Illinois and Indiana of denying AFDC benefits to unborn chidren and their mothers are contrary to the prevailing federal standard for AFDC eligibility and thus invalid under the Supremacy Clause.
 
 II
 
 14
 The named plaintiffs contend that they and the members of their class are entitled to the retroactive payment of AFDC benefits wrongfully withheld prior to the date of the orders of the district courts. The district court in Green v. Stanton, although recognizing that our decision in Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973), granted it the discretionary power to order retroactive payment of welfare benefits, held the equitable grant of such restitutionary relief to be inappropriate with respect to the class as a whole and directed that retroactive relief be awarded solely to the named plaintiffs. The district court's order in Wilson v. Weaver, however, directed the retroactive payment of AFDC benefits to all members of the class as well as the named plaintiffs.
 
 
 15
 Subsequent to argument in the instant appeal the Supreme Court reversed our decision in Jordan v. Weaver stating that we were 'wrong in holding that the Eleventh Amendment did not constitute a bar to that portion of the District Court decree which ordered retroactive payments of benefits found to have been wrongfully withheld.' Edelman v. Jordan, 42 U.S.L.W. 4419, 4427, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974). Accordingly, in view of the Court's holding we reverse the orders of the district courts to the extent that they grant retroactive relief.[5]
 
 
 16
 The judgments of the district courts are affirmed in part and reversed in part.
 
 
 17
 PELL, Circuit Judge (dissenting in part, concurring in part).
 
 
 18
 Being unable to agree with the statutory construction arrived at in the majority opinion, I respectfully dissent.
 
 
 19
 In so doing, I am not unmindful that a substantial majority of the federal judges who have considered the issue have determined that an unborn child was a dependent child within the contemplation of section 402(a)(10) of the Social Security Act.[1] I am also not unmindful that persuasive sociopolitical arguments can be, and have been, advanced in favor of distributing AFDC benefits to the mother of an unborn child who would qualify for such benefits if the child were living apart from the womb. To dispose of the latter matter first, I do not deem judicial concepts of what is good policy to be helpful in statutory construction when there is no evidence that the enacting legislative body gave any consideration to the policy argument.
 
 
 20
 Returning to the first matter, while I am respectful of the analyses afforded the issue by my federal brethren, notwithstanding that cases subsequent to the initial ones have certain manifestations of stare decisis snowballing, I cannot conceive that the Congress in enacting and amending the Social Security Act used language so loosely as to mean that a woman carrying an unborn child but with no living children was a family with a dependent child within the meaning of 42 U.S.C. 602(a)(10) nor that the unborn child while in such status is living with his or her prospective mother within the meaning of 42 U.S.C. 606(a).
 
 
 21
 The legal status of the unborn child, recently the object of attention in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), is not a new problem to the judiciary. At least as early as 1695, although the Common Bench and the King's Bench had unanimously held that a posthumously born child created a gap in the seisin, a thing abhorrent to the common law, the House of Lords with Baron Turton of the Court of Exchequer present held that the child could take a remainder interest in property. Reeve v. Long, 3 Lev. 408 (1695).[2]
 
 
 22
 The legal fiction in the area of property descent that a child en ventre sa mere is supposed to be born appears to be widely accepted in American jurisprudence. Estate of Wolyniec v. Moe, 94 N.J.Super. 43, 226 A.2d 743, 744 (1967). Barnett v. Pinkston, 238 Ala. 327, 191 So. 371, 375 (1939).
 
 
 23
 However, we are not in the present case dealing with the common law, which is not only supposed to be but has been developed by the judiciary, but instead with a matter of statutory construction as to which, as I conceive it, the function of the judiciary is to determine what the legislative body intended to encompass in its enactment.[3] Legal fictions are not a primary canon of statutory construction.
 
 
 24
 It appears clear to me from an overall examination of Title IV that Congress did not intend unborn children to be entitled to benefits. In Section 606(a) itself, 'dependent child' is defined as a 'needy child,' a phrase not particularly apt in describing a fetus. The definition then goes on to require that the child must have 'been deprived of parental support or care' by reason of the absence from the home 'of a parent.' Neither mother nor father is 'a parent' before a child is born. If the fetus is aborted or stillborn, they do not become parents.
 
 
 25
 Carleson v. Remillard, 406 U.S. 598, 603, 92 S.Ct. 1932, 1935, 32 L.Ed.2d 352 (1972), held that 'the presence in the home of the parent who has the legal obligation to support is the key to the AFDC program,' citing King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), and Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970). I am unaware of any requirement for a father to support a child before the child is born. Even though a father may be required to pay the reasonalbe expenses of the mother during pregnancy this is not an obligation to the unborn child as a separate member of the family.
 
 
 26
 Other provisions of the Act lead to the same conclusion. Section 602(a)(17) speaks of 'a child born out of wedlock' in the context of a requirement that the state provide:
 
 
 27
 '(A) for the development and implementation of a program under which the State agency will undertake-- (i) in the case of a child born out of wedlock who is receiving aid to families with dependent children, to establish the paternity of such child and secure support for him . . ..'
 
 
 28
 If Congress had deemed that eligibility had commenced before the child was born, it should have said 'conceived' instead of 'born.' The language used certainly does not fit an unborn child out of wedlock, as to which there might also be reason to establish paternity and to secure support.
 
 
 29
 Many other expressions using the word 'child' make sense only if that term is limited to born children. The following portions of the Act are illustrative:
 
 
 30
 (1) 42 U.S.C. 601 states that the purpose of the AFDC program is to encourage care of dependent children in their own homes or in the homes of relatives.
 
 
 31
 (2) Sections 602(a)(7) and (8) require consideration of a child's income and resources in establishing the amount of assistance.
 
 
 32
 (3) Section 602(a)(11) requires notice to law enforcement officials when the State furnishes AFDC to a 'child who has been deserted or abandoned by a parent.'
 
 
 33
 (4) Sections 602(a)(13) thru (15) require development of a plan of social services for the child and his relatives.
 
 
 34
 (5) Section 602(a)(16) requires state investigations to determine whether AFDC children are living in suitable homes.
 
 
 35
 Also, as I have already indicated, I have difficulty in envisioning the concept of a one-person family. For a further discussion of the statute, see Parks v. Harden, 354 F.Supp. 620, 623-625 (N.D.Ga.1973).
 
 
 36
 I find no reason for including a category which is not present in legislation by virtue of the fact that HEW permitted aid to unborn children at the option of the states. Particularly, I would find no basis in this procedure for an inference that Congress intended the coverage of fetuses to be mandatory.[4] Even if we were to assume that Congress was aware of the administratively devised option extended to the states and thereupon further assumed that the legislation enacted by prior sessions of the Congress did encompass benefits for the unborn child, this, of course, would not mean that this was what was intended at the time the legislation was enacted. While osmotic amendment of statutes by administrative procedure might shorten the legislative processes, I would scarcely deem it presently to be a part of our governmental scheme. However, to believe that Congress made this assumption has no historical basis. That Congress in several decades has not dealt specifically in the present context with the status of the unborn child is as consistent with the belief that the fetus was not eligible as otherwise, for it is indicated in the cases that at least two-thirds of the jurisdictions during the entire period of the Act have not deemed inclusion to be mandatory. Congress may well have agreed with these jurisdictions in understanding the proper construction of the existing legislation as not requiring payment of benefits in the case of the unborn child.
 
 
 37
 When the 92nd Congress did address itself expressly to the problem, the House the Committee Report[5] indicated that the 'committee wants to make clear that an unborn child would not be included in the definition of a child. This will preclude the practice, now used in the AFDC program in some States, of finding that an unborn child does meet the definition, thereby establishing a 'family' even before the child is born.'
 
 
 38
 The language of the committee report indicates to me that the committee intended to 'make clear' what the law was intended to mean, despite a contrary administrative practice.
 
 
 39
 The Senate Report, No. 92-1230, p. 467, 92nd Cong., quoted the same two sentences from the House Report with approval and added: 'The committee bill, like the House bill, would provide that only children who have actually been born would be eligible for Aid to Families with Dependent Children.'
 
 
 40
 While both houses passed bills to this effect, because of other differences on proposed revisions of Title IV neither version became law. There was significantly, however, no disagreement on the aspect of the legislation here involved.
 
 
 41
 The cases reaching the result that the majority did in the present case rely to a considerable extent on King v. Smith, supra; Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); and Carleson v. Remillard, supra. However, I do not consider those cases applicable here. As the Supreme Court observed in the later case of New York State Department of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973), in referring to the three cases mentioned above: 'In those cases it was clear that state law excluded people from AFDC benefits whom the Social Security Act expressly provided would be eligibel.' Whatever arguments may be made for the majority position, one is not that unborn children are expressly made eligible.
 
 
 42
 In sum, no matter how laudable the motivation or the object to be achieved may be, the result reached by the majority of the courts passing on the instant question appears to me so to smack of judicial legislation as to require that laudability of objective be overridden in the interest of the proper scope of the judicial function.
 
 
 43
 I am unaware of any court decision which has given serious consideration to a resolution of the present issue on an equal protection basis and I therefore find no necessity for addressing that contention.
 
 
 44
 I do concur in that part of the opinion which denies retroactivity but, for the reasons stated herein, dissent from the remainder of the opinion.
 
 
 
 [1]
 The term 'dependent child' as defined in section 406(a) of the Social Security Act, 42 U.S.C. 606(a), means:
 (A) needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen, or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, or regularly attending a course of vocational or technical training designed to fit him for gainful employment . . ..
 
 
 [2]
 Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969)
 
 
 [3]
 Medical opinion points to the critical need for proper care and treatment of the fetus during the prenatal period and emphasizes that the needs of the unborn child during this period must be adequately met to ensure the soundness and healthfulness of the child's later development
 
 
 [4]
 It is difficult to discern a rational basis for denying pregnant women the same assistance during pregnancy as is accorded mothers subsequent to the birth of their children. Indeed, a woman may be in need of more assistance during her pregnancy than after the birth of her child. While she is pregnant a woman may be prevented due to her physical condition from maintaining any form of employment. After birth the status of her health does not handicap her ability to obtain a meaningful source of income
 
 
 [5]
 Plaintiffs in Wilson v. Weaver contend that the State of Illinois waived the Eleventh Amendment defense by failing to raise it in the district court and asserting it for the first time on appeal. A similar contention of waiver was raised by the respondent in Edelman v. Jordan. The Court approved of the practice of resolving the Eleventh Amendment defense for the first time on appeal holding 'that the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court.' 42 U.S.L.W. 4427 (94 S.Ct. 1363)
 
 
 [1]
 The score is placed in Alcala v. Burns, 494 F.2d 743 (8th Cir. 1974), as two courts of appeals (including the Alcala court) and twelve district courts in favor of the result reached by the majority opinion of this court, with three district court decisions to the contrary
 
 
 [2]
 Students of the late Professor W. Barton Leach will recall that this case precipitated the publication of Langdel Lyrics of 1938 in which the following effort of class member Donald G. McNeil appeared:
 'Let's fill the cups to Baron Turton
 Who, though the law was clear and certain
 Would rather help a little foetus
 Than round out Charlie Fearne's dull treatise.'
 
 
 [3]
 Even in the case of property descent, the legislatures have been capable of making it clear when it was their intention to do so that an unborn child should have rights. Thus, in Ill.Rev.Statutes, Ch. 3, Sec. 13 it is provided, 'A posthumous child of a decedent shall receive the same share of his ancestor's intestate estate as if he had been born in his father's life time.'
 
 
 [4]
 For the historical development of the HEW practice, see Parks v. Harden, supra
 
 
 [5]
 H.Rep. 92-231, p. 184, reprinted in 3 U.S.Code, Cong. and Admin.News 92nd Cong., 2d Sess., 1972, p. 5170