Barbara WISDOM et al., Plaintiffs-Appellees,

v.

Nicholas NORTON, Commissioner of Welfare, State of Connecticut and Vincent B. Capuano, Director of Eligibility Services of the Connecticut State Welfare Department, Defendants-Appellants.

No. 1058, Docket 74–1402.

United States Court of Appeals, Second Circuit.

Argued May 29, 1974.

Decided Oct. 11, 1974.

Francis J. MacGregor, Asst. Atty. Gen., Hartford, Conn. (Robert K. Killian, Atty. Gen., for the State of Conn., Hartford, Conn., of counsel), for defendants-appellants.

Marilyn Kaplan Katz, Bridgeport, Conn. (Bridgeport Legal Services, Inc., Bridgeport, Conn., and Diane Schneiderman, New Haven Legal Assistance Ass'n, New Haven, Conn., of counsel), for plaintiffs-appellees.

Before MOORE and FEINBERG, Circuit Judges, and WEINFELD,* District Judge.

EDWARD WEINFELD, District Judge:

This appeal presents the question whether an unborn child is eligible for assistance under the Aid to Families with Dependent Children ("AFDC") provisions of Title IV of the Social Security Act of 1935, as amended,[1] and if so, whether the policy of the State of Connecticut of denying such assistance to the unborn child and its pregnant mother is in conflict with the Act and thus invalid under the Supremacy Clause of the United States Constitution.[2] Ap-

---

* Of the Southern District of New York, sitting by designation.

1. 42 U.S.C. § 601 et seq. (1970).

2. To date, 4 courts of appeals and 10 district courts, including the court below, have held that unborn children are entitled to AFDC benefits. Carver v. Hooker, 501 F.2d 1244 (1st Cir., 1974), aff'g, 369 F.Supp. 204 (D. N.H.1973) ; Wilson v. Weaver, 499 F.2d 155 (7th Cir. 1974), aff'g, 358 F.Supp. 1147 (N. D.Ill.1973) and Green v. Stanton, 364 F. Supp. 123 (N.D.Ind.1973) ; Alcala v. Burns, 494 F.2d 743 (8th Cir. 1974), aff'g, 362 F. Supp. 180 (S.D.Iowa 1973), petition for cert. filed, 414 U.S. 809, 94 S.Ct. 26, 38 L. Ed.2d 45 (1974) ; Doe v. Lukhard, 493 F.2d 54 (4th Cir. 1974), aff'g, 363 F.Supp. 823 (E.D.Va.1973), petition for cert. filed, 43 U.S.L.W. 3075 (U.S. Aug. 18, 1974) ; Wisdom v. Norton, 372 F.Supp. 1190 (D. Conn.1974) ; Stuart v. Canary, 367 F.Supp. 1343 (N.D.Ohio 1973) ; Whitfield v. Minter, 368 F.Supp. 798 (D.Mass.1973) ; Jones v. Graham, Civ. No. 73–L–235 (D.Neb., Sept. 5, 1973) ; Harris v. Mississippi State Dept. of Public Welfare, 363 F.Supp. 1293 (N.D. Miss.1973). In addition, two other district courts have granted preliminary injunctions against state denials of AFDC benefits to the unborn. Tapia v. Vowell, Civ. No. 73–B– 169 (S.D.Tex., Nov. 4, 1973) ; Tillman v. Endsley, No. 73–1476–Civ.–CF (S.D.Fla. Oct. 1, 1973). Four federal district courts have held that unborn children are not covered. Poole v. Endsley, 371 F.Supp. 1379 (N.D.Fla.1974) ; Mixon v. Keller, 372 F. Supp. 51 (M.D.Fla1974), pet. for cert. filed in advance of judgment in 5th Cir., 43 U.S. L.W. 3095 (U.S. Aug. 7, 1974) ; Murrow v.

pellees, plaintiffs in the courts below, commenced this action seeking declaratory and injunctive relief on behalf of themselves and all others similarly situated with regard to the State of Connecticut's policy denying AFDC benefits for unborn children to otherwise eligible pregnant women. In substance, the complaint alleges that this policy violates the equal protection clause of the Fourteenth Amendment of the United States Constitution, as well as the Social Security Act and regulations promulgated thereunder, and thus is invalid under the Supremacy Clause.[3] When this suit was instituted, one of the three named plaintiffs was receiving AFDC assistance on the basis of her two children who were living with her, but was denied AFDC benefits for her unborn child; the other two named plaintiffs were not receiving any AFDC assistance. The defendants are the Commissioner of Welfare for the State of Connecticut and the Director of Eligibility Services for the Welfare Department.

The district court consolidated plaintiffs' motion for a preliminary injunction with the trial on the merits,[4] and after hearing testimony and ruling that the prerequisites of a valid class action had been met pursuant to sections (a) and (b)(2) of Rule 23 of the Federal Rules of Civil Procedure, granted judgment for the plaintiffs.[5] The district court stayed its judgment and order pending a decision on appeal by this court.

## I.

Section 402(a)(10) of the Act requires that ". . . aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals."[6] Section 406(a) of the Act provides, inter alia, that AFDC benefits shall be paid to a needy " 'dependent child' . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with"[7] any one of several listed persons. The Act is silent as to aid to an unborn child. However, the Department of Health, Education and Welfare adopted an administrative practice first under an audit policy[8] and later promulgated a regulation whereby the federal government reimbursed a state, which at its option extended such benefits to "an unborn child when the fact of pregnancy has been determined by medical diagnosis."[9] Connecticut, as have thirty-four other jurisdictions, has elected not to pay benefits to unborn children; nineteen jurisdictions have opted to do so. The basic issue, however, centers about the Act and not the regulation.

The district court held the state policy at issue here invalid under the Supremacy Clause of the United States Constitution because it is inconsistent with the eligibility provisions of the Social Security Act.[10] Since states cannot vary the eligibility requirements of

Clifford, Civ. No. 114–73 (D.N.J. June 12, 1973); Parks v. Harden, 354 F.Supp. 620 (N.D.Ga.1973).

3. Any question as to the jurisdiction of the federal courts to hear this suit has been settled by the Supreme Court's decision in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

4. See Fed.R.Civ.P. 65(a)(2).

5. 372 F.Supp. 1190 (D.Conn.1974).

6. 42 U.S.C. § 602(a)(10).

7. 42 U.S.C. § 606(a).

8. HEW, Handbook of Public Assistance Administration, § 3412.6 (Nov. 4, 1946).

9. 45 C.F.R. § 233.90(c)(2)(ii) (1973).

10. The court summarized the reasons for its holding:
    1. The definition of "child" includes a "fetus," an "unborn human being," and an "unborn infant."
    2. The medical evidence clearly indicated that inclusion of the unborn child as a "dependent child" is consistent with the purposes of the Act.
    3. No credible argument can be advanced that Congress intended to exclude an unborn child from coverage of the Act. An unborn child is not any less "needy" or "dependent" than a child who has been born.

AFDC and exclude from its benefits individuals intended to be covered,[11] our inquiry must focus on whether an unborn child is a "dependent child" within the meaning of the Act and therefore entitled to AFDC benefits.

Neither section 406(a) nor any other provision of the Act explicitly includes or excludes an unborn child. As has been cogently argued elsewhere,[12] the language of various sections of Title IV makes sense only if the term "child" is limited to those who are born. The statutory scheme supports the view that Congress did not intend to confer welfare benefits to children until they were born. For example, section 401 states the purpose of the AFDC program as "encouraging the care of dependent children in their own homes or in the homes of relatives . . . ."[13] Clearly it is impossible to encourage the care of an unborn child in the home of a relative. So, too, sections 402(a)(7) and (8) of the Act require consideration of a child's income and resources in establishing the amount of assistance.[14] A fetus, of course, has no income. The foregoing, as well as other provisions

of the Act—for example, sections 402(a)(11), 402(a)(13) through (15), 402(a)(16),[15] all of which concern living children, give strong support to the view that the "dependent child" referred to in section 406(a) was intended to apply only to one that was born. Appellees' counter argument that where identical words are used in a statute with quite different meanings[16] it is the duty of the courts to give the words different meanings, is quite unpersuasive in light of the overall purpose of Title IV, as reflected by the sections referred to above.

Appellees, however, citing definitions in several dictionaries, argue that the ordinary meaning of "child" includes an unborn child.[17] Appellants argue contrariwise, citing other dictionaries in support of their contention that under ordinary definitions the word "child" does not mean an "unborn child."[18]

This battle of dictionaries appears to be a stalemate. Nevertheless, application of the "ordinary meaning"[19] rule in this case would seem to bear against appellees' position. "[L]egislation when not expressed in technical terms is addressed to the common run of men and

---

4. HEW regulations have permitted payments to unborn children; the optional features of the administrative regulations, however, are violative of the provisions of the Act.

5. Both houses of the 92nd Congress proposed amendments to the Act which would have excluded unborn children, but the amendments were not enacted.

6. In the absence of express congressional authorization, a state policy that excludes persons eligible for assistance under federal standards is in conflict with the Act and is invalid under the Supremacy Clause. 372 F.Supp. 1190, 1192 (D. Conn.1974).

11. Carleson v. Remillard, 406 U.S. 598, 600, 92 S.Ct. 932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 313, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

12. Mixon v. Keller, 372 F.Supp. 51 (M.D. Fla.1974); Parks v. Harden, 354 F.Supp. 620, 625 (N.D.Ga.1973). *See also* Wilson v. Weaver, 499 F.2d 155, at 158 (7th Cir., 1974) (Pell, *J.*, dissenting).

13. 42 U.S.C. § 601.

14. 42 U.S.C. § 602(a)(7) and (8).

15. 42 U.S.C. §§ 602(a)(11), 602(a)(13) through (15), 602(a)(16).

16. Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932).

17. The American Heritage Dictionary of the English Language (1969); The Shorter Oxford English Dictionary (1933); Webster's New Twentieth Century Dictionary (Unabridged) (2d ed. 1970); Webster's Unabridged Dictionary (2d ed. 1969).

18. Funk & Wagnalls Standard Dictionary, International Edition (1958); The Random House Dictionary of the English Language (Unabridged) (1966); Rogets International Thesaurus (3d ed. 1962); Black's Law Dictionary (4th ed. 1951); Webster's Third International Dictionary (1969); Ballentine's Law Dictionary (3d ed. 1969).

19. Bailey v. Drexel Furniture Co., 259 U.S. 20, 36, 42 S.Ct. 449, 66 L.Ed. 817 (1922); DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042 (1919).

is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." [20] We are of the view that the word "child" is commonly and ordinarily understood to mean a born child and not a fetus. Indeed, when it is intended to refer to a fetus it is usually modified by another word such as "unborn child." Another example—when enumerating one's offspring it is common to say, where appropriate, "I have two children and one on the way," not "I have three children." Common usage permits the conclusion that while a fetus is more than a non-child, it is something less than a child—a view which finds support in the Supreme Court's ruling in Roe v. Wade,[21] which refused to recognize that a fetus prior to the final trimester of pregnancy has rights separate from those of its mother.

We will assume, however, that the various dictionary definitions of "child" create sufficient ambiguity as to the meaning of that word as used in the AFDC provisions to justify turning to the legislative history of the Social Security Act for guidance. Appellees urge that inclusion of the unborn within the definition of "dependent child" furthers the underlying purpose of the Act of "encouraging the care of dependent children." This is hardly open to dispute—indeed, many other provisions could be read into the Act which would further that underlying policy. However desirable such additions might be, they involve legislative policy considerations and are beyond the scope of the judicial function. The issue is whether Congress intended to extend the benefits of the Act to an unborn child. The entire thrust of Title IV is in furtherance of the interests of living and dependent children. Congress manifested no concern at the time the statute was enacted or in subsequent amendments with making funds available for the benefit of unborn children.

When the Social Security Act was discussed and debated prior to its enactment, what was to become the AFDC program was viewed as a counterpart to, and a federally funded extension of, state statutes known as "mothers' aid" or "mothers' pension" laws. These laws were described as follows:

> "These are not primarily aids to mothers but defense measures for children. They are designed to release from the wage-earning role the person whose natural function is to give her children the physical and affectionate guardianship necessary, not alone to keep them from falling into social misfortune, but more affirmatively to rear them into citizens capable of contributing to society." [22]

Another report stated the following about these laws and the proposed AFDC program:

> "Through cash grants adjusted to the needs of the family it is possible to keep the young children with their mother in their own home, thus preventing the necessity of placing the children in institutions. This is recognized by everyone to be the least expensive and altogether the most desirable method for meeting the needs of these families that has yet been devised." [23]

20. Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). See also Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660 (1925): "[T]he plain, obvious and rational meaning of a statute is always preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover."

21. 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

22. Message of the President Recommending Legislation on Economic Security, H.R.Doc. No. 81, 74th Cong., 1st Sess. 30 (1935).

23. S.Rep.No.628, 74th Cong., 1st Sess. 17 (1935). See also H.R.Rep.No.615, 74th Cong., 1st Sess. 10–12 (1935).

Finally, Title IV of the Act emphasizes that it was designed "for the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives." Thus, it is apparent that an essential purpose of AFDC was to provide assistance to children who were fatherless or whose absent father failed to provide support so that the mother would be released from a wage-earning role and she would remain at home, supervising their upbringing and preventing them from falling into delinquency.[24] Indeed, so strong was that policy, that Congress in 1950 amended the Act so that the aid would include payments "to meet the needs of the relative with whom any dependent child is living." [25] It is equally apparent that this concern that the mother be in the home to raise the child only comes into play once the child is born. On the other hand, the principal purpose to be served by making payments for an unborn child would be the care of its mother during the pregnancy by providing nutrition, medication and health care, which no doubt would be beneficial to the unborn child. The Social Security Act at the time of its passage included a separate program which provides payments for maternal and pre-natal health care, but it does so in Title V,[26] not in Title IV which contains the AFDC provisions.[27] For example, section 508(a) of Title V of the Act [28] authoriz-

es federal grants to state agencies and private agencies in support of projects providing "necessary health care to prospective mothers (including, after childbirth, health care to mothers and their infants) who have or are likely to have conditions associated with child bearing . . . . ."

We conclude that the language and purpose of the AFDC provisions and the structure of the Social Security Act indicate that unborn children were not intended to be included in AFDC. We are also of the view that the omission of language in the statute and the absence of legislative history specifically excluding (or, for that matter, including) unborn children from coverage is because Congress never contemplated that they be eligible for AFDC benefits. It is manifest that had Congress intended to include unborn children within the definition of "dependent children," in all likelihood it would have expressed itself in clear and unambiguous language.[29]

Appellees place great reliance on a trilogy of Supreme Court cases striking down state eligibility restrictions for AFDC benefits.[30] These cases may be summed up as holding that "at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for as-

---

24. While the AFDC provisions have been amended several times during the intervening years, including in 1962, a change in the title of the program from its original "Aid to Dependent Children" to the present "Aid to Families with Dependent Children," see Pub.L. No. 87–543, 76 Stat. 172, 185 (1962), there is no evidence that the purpose of the program—promoting the home life of dependent children and their fostering by their mothers or other relatives—has changed. See 42 U.S.C. § 601 et seq. (1970).

25. 42 U.S.C. § 606(b)(1).

26. 42 U.S.C. § 701 et seq. (1970).

27. We do not bring attention to Title V with the idea that including unborn children in AFDC would necessarily be inconsistent with providing funds for maternal health care in Title V. To the contrary, as already

noted, it would not only be consistent with but it would further the general policy of the entire Act. The significance of Title V for our purposes is as evidence—rather strong evidence when combined with the language and purpose of the AFDC provisions —of a congressional intent *not* to include unborn children under AFDC but to provide for maternity care in a different section of the statute.

28. 42 U.S.C. § 708(a).

29. *Cf.* New York State Dept. of Social Services v. Dublino, 413 U.S. 405, 414, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

30. Carleson v. Remillard, 406 U.S. 598, 92 S. Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L. Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

sistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." [31] Appellees contend that these cases require inclusion of unborn children in AFDC because fetuses are not specifically excluded from coverage. In a subsequent decision, however, the Court clarified the trilogy rule as applicable to those cases where "it was clear that state law excluded people from AFDC benefits who the Social Security Act expressly provided would be eligible." [32] The Act does not expressly provide that the unborn are eligible; moreover, we have rejected appellees' argument that the unborn come within the Act's definition of "dependent child." Hence the trilogy rule does not apply here.

■ We do, however, agree with both appellees and appellants that the Department of Health, Education and Welfare ("HEW") is incorrect in its policy of allowing payments to unborn children at the option of the participating states. If unborn children are eligible under the Social Security Act for AFDC payments, the trilogy cases clearly prevent the states from granting or withholding these payments at their options, since the Act itself does not provide such an option. If, on the other hand, unborn children are not eligible under the Act for AFDC benefits, HEW has no authority to approve such optional pay-

ments. The Act as to unborn children is either mandatory or it is not; either they are eligible or not eligible as "dependent children." Since we hold that unborn children are not eligible for AFDC, HEW exceeded its authority in granting states the option to make such payments under the Social Security Act.[33]

■ Appellees contend that we should nonetheless give great weight to the fact that HEW regulations permit AFDC payments to unborn children [34]—although the optional aspect of these payments is invalid—since HEW is the federal agency charged with the program's administration. However, if HEW has incorrectly construed the Social Security Act to permit optional AFDC payments to unborn children, it may also have misconstrued it in ruling that such payments are permissible under the Act at all. While the construction of a statute by the agency charged with administering it is entitled to be given weight, "in the end, after whatever reserve, upon the courts rests the ultimate responsibility of declaring what a statute means." [35] We are convinced that our construction of the statute is correct, and decline to follow the HEW regulation to the extent that payments thereunder of AFDC benefits for unborn children are authorized by the Social Security Act.[36] Moreover, reliance upon the administrative regulation as reflecting Congressional purpose to in-

---

31. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971).

32. New York State Dept. of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2517, 37 L.Ed.2d 688 (1973).

33. In this respect, we disagree with two other courts that have upheld state denials of AFDC benefits to the unborn. *See* Poole v. Endsley, 371 F.Supp. 1379, 1383 (N.D.Fla. 1974); Parks v. Harden, 354 F.Supp. 620, 625–626 (N.D.Ga.1973).

34. 45 C.F.R. §§ 233.90(c)(2)(ii), (c)(3) (1973).

35. Fishgold v. Sullivan Drydock & Repair Corp., 154 F.2d 785, 790 (2d Cir.), (L. Hand, J.), aff'd, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). *See also* Volkswa-

genwerk Aktiengesellschaft v. Federal Maritime Comm'n, 390 U.S. 261, 272, 88 S.Ct. 929, 19 L.Ed.2d 1090 (1968); FTC v. Colgate-Palmolive Co., 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965).

36. This conviction is strengthened by the analysis of the court in Parks v. Harden, 354 F.Supp. 620, 625 n. 5 (N.D.Ga.1973), of the genesis of HEW's policy allowing AFDC payments to unborn children. According to that court, the policy stemmed from a decision by the Social Security Board to waive an audit exception to payments made to unborn children by the State of Wisconsin. Thus, it appears to have originated as an *ad hoc* decision to defer to a state's policy, rather than as a rule based on an interpretation of the federal statute.

clude an unborn child within the definition of a "dependent child" is misplaced. HEW has expressly disavowed that under the Act an unborn child is within the definition of a needy "dependent child." Its position is that the regulation under which federal financial participation is made available, at the state's option, in payments on behalf of unborn children is an exercise of administrative discretion authorized by the Secretary's broad rule-making authority pursuant to section 1102 of the Act.[37] Specifically with respect to that regulation, HEW is of the view "that Congress did not intend to include unborn children within the definition of 'dependent child' contained in section 406(a) of the Act." [38]

■ Finally, appellees rely on the fact that committees in both Houses of the 92nd Congress proposed an amendment to 42 U.S.C., section 606(a), that would have explicitly excluded the unborn from the term "dependent child." [39] The amendment was not enacted.[40] Appellees interpret this as congressional recognition of the HEW policy and acknowledgment of the correctness of HEW's construction of section 606(a). Another court, however, has pointed out that "the reason the legislation was not passed was because the Congress decided to deal only with the Adult Categories of Public Assistance in [the law that was finally enacted, and] [t]herefore, all references to AFDC were set aside at that time." [41] Moreover, Congress' failure to enact the proposed amendment at that time—or to enact a similar amendment at any other time—may just as logically be interpreted as acquiescence

in HEW's policy of making AFDC payments to the unborn optional, a policy which, if upheld, would defeat appellees' statutory claim. "In any event, unsuccessful attempts at legislation are not the best of guides to legislative intent" [42]—certainly not as to the intent of the 74th Congress which passed the legislation here at issue.[43] We can discern no clear meaning from the 92nd Congress' failure to enact the proposed amendment, and for our purposes ascribe no significance to it.

In sum, with deference to the four courts of appeals who have held otherwise, we hold that Connecticut's denial of AFDC benefits to unborn children does not conflict with the Social Security Act.

## II.

Since we reverse the district court's holding that Connecticut's policy conflicts with the Social Security Act, we next consider appellees' claim that this state policy of denying AFDC assistance to unborn children violates the Equal Protection Clause of the Fourteenth Amendment.

Appellees originally demanded that a three-judge district court be convened pursuant to 28 U.S.C., section 2281, but the district court's resolution of the pendent statutory claim [44] eliminated the need to consider convening a three-judge court to pass upon the equal protection issue.

■ Appellees' constitutional attack on the statewide policy of Connecticut's Welfare Department is within the

37. 42 U.S.C. § 1302.

38. Supplemental brief submitted on behalf of HEW in Adams v. Huecker, U.S.D.C., W.D. Ky. at 9 (May 2, 1974).

39. See H.R.No.92–231, 92nd Cong., 1st Sess. 184 (1971) ; S.Rep.No.92–1230, 92nd Cong., 2d Sess. 467 (1972), U.S.Code Cong. & Admin.News 1972, p. 4989.

40. See Pub.L.No.92–603, 86 Stat. 1329 (1972).

41. Mixon v. Keller, 372 F.Supp. 51, 55 (M. D.Fla.1974).

42. Red Lion Broadcasting Co. v. F.C.C., 395 U.S. 367, 382 n. 11, 89 S.Ct. 1794, 1802, 23 L.Ed.2d 371 (1969).

43. United States v. United Mine Workers of America, 330 U.S. 258, 281–282, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

44. See Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

**758**

scope of section 2281 [45] and the issue is neither "wholly insubstantial" nor "obviously frivolous" so as to avoid under normal circumstances the need to convene a three-judge district court to decide the constitutional issue.[46] Nevertheless, we decline to remand this case to the district judge for him to convene a three-judge district court under 28 U.S.C., section 2284.

In view of our conclusion that AFDC statutory provisions do not permit, much less authorize, payments to the unborn, there is no reason to remand the constitutional question for determination by a three-judge district court when the result is foreordained since that court, bound as it would be by our determination of the statutory issue,[47] would have to deny the equal protection claim. It would be a waste of judicial manpower and of the litigants' time and resources to require that a three-judge district court go through the ritual of relying on our decision here to reject—as it would have to—appellees' constitutional argument. This conclusion strikes us as particularly appropriate and consistent with the historical purpose of section 2281, which was enacted for the protection of the states from the judgment of a single district judge,[48] a purpose that would not be served by a remand in this case. True, this action deprives appellees of direct appeal to the Supreme Court from a three-judge court,[49] but Supreme Court review of our decision is available through the device of certiorari, which appears likely, given the status of the litigation on this issue in the various circuits and the already pending petitions for certiorari.[50] Moreover, the direct appeal provision appears "far more likely to have been for the benefit of the state than the plaintiff." [51]

Turning to the merits of appellees' constitutional claim, we assume, without deciding, that appellees would be entitled to AFDC benefits in their own behalf rather than in behalf of their unborn children.[52] Essentially, the equal protection claim is based upon alleged discrimination in denying to them, as mothers of unborn children, the AFDC benefits and payments that are provided to all other children and their mothers. The Supreme Court has held that "[i]n the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." Further, "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all. . . . It is enough that the State's action be rationally based and free from invidious discrimination." [53] Connecticut's policy of denying AFDC benefits to the unborn

45. Board of Regents v. New Left Education Project, 404 U.S. 541, 544 n. 2, 545, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972); Ortiz v. Colon, 475 F.2d 135 (1st Cir. 1973); Rothblum v. Board of Trustees, 474 F.2d 891 (3d Cir. 1973). See also Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800 (1940).

46. Goosby v. Osser, 409 U.S. 512, 518–519, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

47. Lewis v. Rockefeller, 431 F.2d 368, 371 (2d Cir. 1970).

48. Seergy v. Kings County Republican County Comm., 459 F.2d 308, 313 (2d Cir. 1973).

49. 28 U.S.C. § 1253.

50. See note 2, supra.

51. Astro Cinema Corp., Inc. v. Mackell, 422 F.2d 293, 298 (2d Cir. 1970); cf. Currie, The Three-Judge District Court in Constitutional Litigation, 32 U.Chi.L.Rev. 1 (1964).

52. Appellants contend that appellees can only receive benefits in behalf of their children, and since the Supreme Court ruled in Roe v. Wade, 410 U.S. 113, 158, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), that a fetus is not a "person" for the purposes of the Fourteenth Amendment, appellees' unborn children cannot maintain a claim under the equal protection clause.

53. Dandridge v. Williams, 397 U.S. 471, 485–487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); see Jefferson v. Hackney, 406 U.S. 535, 545–551, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972).

easily meets that test. Appellees do not allege that it is invidiously discriminatory in a constitutional sense, and the classification is a rational means of advancing the purpose of the AFDC program: encouraging the presence of a relative in the home of a dependent child to supervise the child's upbringing.

The judgment of the district court is reversed.